**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| CHRISTINE POSPISIL, | No. C06-0143 |
| Plaintiff, | |
| vs. | **RULING ON MOTION FOR** |
| | **SUMMARY JUDGMENT** |
| O'REILLY AUTOMOTIVE, INC., | |
| RANDY SWAIM, and JON WORKMAN, | |
| Defendants. | |

———————————

## TABLE OF CONTENTS

I. INTRODUCTION......................................... 2

II. PROCEDURAL HISTORY................................. 2

III. FACTUAL BACKGROUND.............................. 3

IV. PLAINTIFF'S CONSTITUTIONAL ARGUMENTS.................. 8
    A. Seventh Amendment Argument........................ 8
    B. Fourteenth Amendment Argument..................... 9

V. LEGAL STANDARD FOR SUMMARY JUDGMENT................ 9

VI. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT............ 10
    A. Failure to Promote based on Sex..................... 10
    B. Plaintiff's Retaliation Claim....................... 15
        1. Plaintiff's Prima Facie Case.................... 16
            a. Adverse employment action.................. 16
            b. Causal connection......................... 17
        2. Defendants' Legitimate Non-Retaliatory Reason............ 18
        3. Pretext.................................... 18
    C. Individual Liability of Swaim and Workman................. 22

1

  **D.  *Punitive Damages*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     *1. Iowa Civil Rights Act* . . . . . . . . . . . . . . . . . . . . . . . . . 23
     *2.  Title VII* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
  **E.  *Front Pay*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**VII.  *CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

***ORDER*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## I.  INTRODUCTION

  This matter comes before the Court on the Motion for Summary Judgment (docket number 23) filed by Defendants O'Reilly Automotive, Inc., Randy Swaim, and Jon Workman on July 30, 2007, and the Resistance (docket number 30) filed by Plaintiff Christine Pospisil on September 7, 2007.  A telephonic hearing on the motion was held on September 24, 2007.  Plaintiff appeared by her attorneys, Paige Fiedler and Brooke Timmer.  Defendants appeared by their attorneys, Philip H. Dorff and Apryl M. DeLange.

## II.  PROCEDURAL HISTORY

  On February 27, 2006, Plaintiff timely filed charges of employment discrimination with the Iowa Civil Rights Commission ("ICRC").  On July 11, 2006, the ICRC issued an administrative release (right-to-sue letter) to Plaintiff with respect to her charges of discrimination, pursuant to Iowa Code section 216.16.  On September 27, 2006, having exhausted her administrative remedies, Plaintiff filed a Petition and Jury Demand in the Iowa District Court for Linn County (Case No. LACV055975).  Plaintiff alleged sex discrimination and retaliation by Defendants, in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216 (Count I), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count II).

  Defendants filed a Notice of Removal to the United States District Court for the Northern District of Iowa, Cedar Rapids Division, on October 10, 2006.  Defendants filed their Answer and Affirmative Defenses on October 12, 2006.  On October 26, 2006, both parties consented to proceed before a United States Magistrate Judge pursuant to the

2

provisions set forth in 28 U.S.C. § 636(c). On July 30, 2007, Defendants filed the instant Motion for Summary Judgment. On September 7, 2007, Plaintiff filed a Resistance. Defendants filed a Reply (docket number 41) on September 19, 2007.

### III. FACTUAL BACKGROUND

Defendant O'Reilly Automotive, Inc. ("O'Reilly") is an auto parts supplier. O'Reilly is a Missouri corporation with 900 stores in sixteen states. Plaintiff began her employment with O'Reilly on or about May 12, 2003. She was employed as a Retail Service Specialist ("RSS") and worked in O'Reilly's Marion, Iowa store. The RSS job description provides that it is the duty of an RSS to:

> Support the evening/weekend shift assistant store manager in the areas of sales, customer service, store appearance and operations. Assume shift management responsibilities in the absence of an assistant manager on duty.

(Defendants' Appendix at 71) One of the job requirements of the RSS is to close the store. The store closing duties include: (1) Preparing the coffee pot, (2) checking, securing, locking, and parking delivery vehicles in designated areas, (3) performing end of day procedures, (4) securing money and deposits, (5) turning off lights and unnecessary appliances, (5) ensuring all night security lights are on, and (6) locking doors and securing the building.[1]

Plaintiff received a copy of the Team Member Handbook when she started working for O'Reilly in May, 2003. The O'Reilly Team Member Handbook provides the following pertinent information:

> **EMPLOYMENT POLICY**
> Employment with O'Reilly is "at-will." This means that employment is for no definite period of time and may be terminated by you or O'Reilly for any reason, with or without cause or notice. No team member, management or otherwise, is authorized to alter this policy.

---

[1] *See* Defendants' Appendix at 72.

## EQUAL OPPORTUNITIES

We are an equal opportunity employer. As a result, we evaluate team members and applicants based on skills and performance and do not discriminate on the basis of race, religion, color, national origin, sex, age, military obligation, or disability. This applies to all areas of employment, including recruitment, hiring, pay, promotion, job assignment, etc.

. . .

## CORRECTIVE ACTION PROGRAM

We believe most team members make a consistent effort to be conscientious and professional in doing their job; however, it is occasionally necessary to talk formally to a team member who may have developed job performance problems.

Our program is designed to give a team member a chance to correct unacceptable job performance before it becomes a major problem and to work together with his/her supervisor in developing a plan for improvement.

. . .

## HARASSMENT (SEXUAL & OTHERWISE)

It is the intent of O'Reilly that all team members enjoy a work environment free from all forms of discrimination, including harassment.

Harassment based on age, race, color, religion, mental or physical disability, sex, veteran status, or national origin is considered a violation of our policy on Equal Employment Opportunity.

You are expected to deal fairly and honestly with other team members to ensure a work environment free from intimidation and harassment. Abuse of the dignity of anyone through ethnic, racist, sexist slurs, or through other derogatory or objectionable conduct is unacceptable behavior and will be subject to corrective action.

4

> Sexual harassment is a specific form of harassment that undermines the integrity of the employment relationship. It will not by tolerated. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when:
> - Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;
> - submission to or rejection of the conduct is the basis for an employment decision affecting the harassed team member; or
> - the harassment substantially interferes with a team member's work performance or creates an intimidating, hostile, or offensive work environment.
>
> If you feel that you have been discriminated against or have observed another team member being discriminated against due to race, color, religion, national origin, disability, sex, age or veteran status, you should report such incidents to your supervisor or the Human Resources Department immediately (1-800-288-6661, ext. 8506) without fear of reprisal. A prompt, thorough investigation will be made as confidentially as possible. Appropriate action, up to and including termination, will be taken to ensure the neither discrimination nor harassment persist.

(Defendants' Appendix at 8, 26-28)

Prior to August, 2005, Kathleen Hall left the position of Installer Service Specialist ("ISS") at O'Reilly's store in Marion, Iowa where Plaintiff worked. Plaintiff showed interest in the ISS position to management when it became open. Plaintiff was particularly interested in the position because it was a day shift position, and she wanted to quit working the night shift. The position was filled by Joey Krum, an assistant manager from the O'Reilly store located in Independence, Iowa.

5

On or about August 2, 2005, Plaintiff spoke with her District Manager, Randy Swaim ("Swaim"), and asked him why she was not considered for the ISS position.[2] Swaim suggested Plaintiff was not considered for the ISS position because she is a female.[3] On August 15, 2005, Plaintiff called O'Reilly's TIPS hotline and reported that she had been discriminated against on the basis of sex by Swaim. Specifically, Plaintiff told the hotline operator that:

> I asked [Swaim] point blankly when um our ISS position came open in our store why I didn't get it and his response was because you're a female and I didn't think that would ever hold me back from doing anything. He said it was because I was a female. He goes, I don't know what it is in this store, but the dealers don't like dealing with women. I talked to enough of the dealers and I deal with them pretty much on a

---

[2] Plaintiff tape recorded her conversation with Swaim.

[3] The transcript of the tape recorded conversation provides:

| [Plaintiff]: | Why didn't [I] get the ISS position? |
|---|---|
| [Swaim]: | Why? Because we determined -- it wasn't anything Kathy was doing wrong over here. |
| [Plaintiff]: | Okay. |
| [Swaim]: | It was that for some odd reason the accounts around here don't want to deal with a female. I don't know what it is. I have no problems with it, you know. Kathy I think was doing a pretty good job back there. Yeah, she made her share of mistakes, but we do that. |
| [Plaintiff]: | Yeah. |
| [Swaim]: | But we couldn't -- the biggest thing we would going on out there, is well it is a female. Are you going to be able to go out and change everybody's mind or mindset on how to deal with females? No. This -- is obviously, you know automotive is not a female oriented business. It has always been male dominant. |

*See* Defendants' Appendix at 124.

6

daily basis when I'm here, that none of them have ever expressed a problem with it.

(Defendants' Appendix at 133) Following Plaintiff's complaint to the TIPS hotline, Allen Alexander, O'Reilly's Regional Manager, conducted an investigation into Plaintiff's allegations of sex discrimination. Alexander issued a report which found:

> Randy Swaim . . . had told [Plaintiff] that her gender was a factor in considering her for the ISS position since, in his words, we have some installer accounts who were buying less from us during the time we had Kathleen Hall in that position, which was for most of the past year. Randy told me that he was trying to give [Plaintiff] a more acceptable reason she wasn't being considered for the promotion, rather than simply telling her that she lacked the skills and experience to fill that position, which he thought would be more difficult for her to accept. I explained to Randy that his use of gender as a reason for considering anyone's potential for advancement is absolutely unacceptable and against our company policy and the law. He understands that he made a mistake, and I'm confident he won't repeat this error. . . .
>
> In summary, it appears Randy had done everything possible to try to help [Plaintiff] with her personal issues and her work needs. He obviously made a serious mistake in giving her gender as a reason for not moving her to the ISS position, even though it may have been well intentioned. . . . I have already coached him verbally on the seriousness of his poor judgment in this case. In the time Randy has been a store manager and district manager, I have never had any concerns about his willingness to promote females to positions of responsibility and he always treats all of his team with respect and dignity.

(Defendants' Appendix at 136-37) Swaim was disciplined on August 25, 2005 with a "First and Final Warning." The disciplinary form provides that Alexander "coached [Swaim] on O'Reilly's policy of non-discrimination and he understands [the] policy and

7

his mistake with [Plaintiff]. No further incidents of discrimination, express or implied, will be tolerated."[4]

Plaintiff was terminated from her employment with O'Reilly on September 6, 2005. Defendants state that Plaintiff was terminated for poor job performance. Specifically, Plaintiff's discharge documentation provides:

> On [September 5, 2005, Plaintiff] was the manager in charge of closing the store. On [September 6, 2005], it was discovered that the front door was still ajar and not secured. [Plaintiff] has had a 1st and 2nd warning as well as a first and final decision making leave on [August 31, 2005]. These corrective actions were pertaining to her job performance.
>
> The Store manager as well as the District manager have asked that this team member be terminated from employment.

(Defendants' Appendix at 150) Hudson Parsons ("Parsons"), Team Member Relations Coordinator for O'Reilly, made the final decision to terminate Plaintiff. Parsons based his decision to terminate Plaintiff on Plaintiff's "prior disciplinary actions and her statement that she did not do a physical check of the door and her agreement that she made a bad judgment call as a member of management."[5] Other facts that are significant for making a determination on Defendants' Motion for Summary Judgment will be discussed, as necessary, in the Court's consideration of the legal issues presented.

## IV. PLAINTIFF'S CONSTITUTIONAL ARGUMENTS

### A. Seventh Amendment Argument

Plaintiff argues that summary judgment is unconstitutional under the English common law that governs Seventh Amendment jurisprudence. The Eighth Circuit Court of Appeals has held that summary judgment does not violate the Seventh Amendment.

---

[4] *See* Defendants' Appendix at 139.

[5] *See* Defendants' Appendix at 155-56.

8

*Harris v. Interstate Brands Corp.*, 348 F.3d 761, 762 (8th Cir. 2003). Specifically, the Eighth Circuit stated:

> A grant of summary judgment does in itself not violate the Seventh Amendment. Summary judgment is proper when no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A grant of summary judgment does not violate the Seventh Amendment right to a jury trial. This right exists only with respect to disputed issues of fact. *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319-20, 23 S. Ct. 120, 47 L. Ed. 194 (1902). Actions for damages caused by employment discrimination, like other actions at law, are, in general, triable as of right by jury; but there is nothing special about employment-discrimination cases that would exempt them from normal procedural controls like motions for directed verdict or for summary judgment.

*Id.* The Court will follow the Eighth Circuit on this issue and employ FED. R. CIV. P. 56(c) in accordance with the standard set forth below.

### B. Fourteenth Amendment Argument

Plaintiff argues that summary judgment in favor of defendants violates her right to equal protection under the Fourteenth Amendment. Plaintiff cites no authority which is binding on this Court to support her Fourteenth Amendment argument. Therefore, the Court will employ FED. R. CIV. P. 56(c) in accordance with the standard set forth below.

### V. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all

9

reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g., Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## VI. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Failure to Promote based on Sex

There are two ways for an employee to survive summary judgment in a Title VII sex discrimination claim. *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 907 (8th Cir. 2006).[6] The first method for surviving summary judgment requires the employee to present direct evidence of discrimination. *Id.* If direct evidence is unavailable to the

---

[6] "[D]iscrimination claims alleged under the Iowa Civil Rights Act are analyzed in the same manner as their federal law counterparts." *Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n.3 (8th Cir. 1999). Thus, the Court will analyze both Plaintiff's Title VII and Iowa Civil Rights Act claims using federal law.

10

employee, then he or she may employ the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish an inference of unlawful discrimination. *Tenge*, 446 F.3d at 907.

Defendants argue that the *McDonnell Douglas* burden-shifting analysis is applicable in this case. Plaintiff, however, argues that the *McDonnell Douglas* framework is inapplicable because she is able to present direct evidence of sex discrimination by Defendants. Specifically, Plaintiff asserts that a tape recorded conversation she had with Swaim, her District Manager, on August 2, 2005, constitutes direct evidence of sex discrimination. In that conversation, Plaintiff asked Swaim why she was not considered for the ISS position. Swaim told her that the reason she was not considered for the position was that

> for some odd reason the accounts around here don't want to deal with a female. I don't know what it is. I have no problems with it, you know. Kathy I think was doing a pretty good job back there. Yeah, she made her share of mistakes, but we do that. . . . But we couldn't -- the biggest thing we would going on out there, is well it is a female. Are you going to be able to go out and change everybody's mind or mindset on how to deal with females? No. This -- is obviously, you know automotive is not a female oriented business. It has always been male dominant.

(Defendants' Appendix at 124) Plaintiff further points out that, in his deposition, Swaim stated that gender was a consideration when filling the ISS position.[7]

---

[7] *See* Plaintiff's Appendix at 39-40. In his deposition testimony, Swaim stated:

Q:  Do you recall if you indicated . . . that her gender was a factor in considering her for the position for ISS?

A:  I didn't indicate . . . that her gender was a factor in it, but I did put in my statement that those words were used as far as the accounts did not want -- they didn't care to deal with the female because of knowledge. They didn't feel they had the knowledge.

Q:  So what distinction are you making? I guess I'm

(continued...)

11

Defendants argue that Swaim's statements are not direct evidence of sex discrimination because they were unrelated to the decisionmaking process in filling the ISS position, and were made to maintain Plaintiff's morale. Defendant also argues that Swaim told Plaintiff she did not get the ISS position because she did not meet the requirement of having a valid driver's license for the position. However, the record demonstrates that Swaim's discussion with Plaintiff regarding her lack of a valid driver's license was related to her not being promoted to the position of daytime assistant manager. The ISS position is separate from the assistant manager position. Unlike the assistant manager position, the record demonstrates that Swaim informed Plaintiff that she did not get the ISS position because she was a woman. Specifically, during the investigation of Plaintiff's complaint to the TIPS hotline, Swaim provided the following statement:

---

[7](...continued)

              unclear.

A:    I guess the distinction I'm making is that society's dictated that they don't feel females can be in auto parts. That's not me. . . .

Q:    But saying that society dictates that maybe these older men don't want to deal with a female in regards to auto parts, does that influence your decision as to who gets placed there?

A:    I wouldn't say it influences my decision. Well, yeah, it does influence my decision, but that's not what I base it on. . . .

Q:    So if they indicate they're more comfortable with a male, that's something you would take into account in placing someone in that position?

A:    Probably.

Q:    I guess, just so we're clear, gender would be something you take into consideration in filling the installer service specialist?

A:    It would be something I take into consideration, yes.

(Swaim's Deposition at pp. 50, l. 17-51, l. 5; 52, l. 3-9; 52, l. 22 - 53, l. 6)

12

During a regular visit, at store 349, [Plaintiff] approached me and she informed me that she had to be placed on days or she was going to have to terminate her employment. . . . During the conversation, she stated that she was upset that she did not get the daytime Assistant Manager position and wanted to know why. I explained to [Plaintiff] that I needed a Team Member that was able to drive and make deliveries. I further asked her when she would be getting her driver's license back and she said, "[s]ometime in September[,]" but she would still not be able to drive a Company vehicle, because of a speeding ticket that she had. I further made a suggestion of moving her to store 796, where it wasn't as imperative that everyone be able to drive. . . . She asked me about why she was not considered for the [ISS position] and I informed her that it was nothing against her, but past performance of having a female on the dealer counter, the accounts for some reason don't seem to think that they have the knowledge. She stated that she understood and that she saw it on the parts counter, [Plaintiff] even gave me an example of where an account recently done that to her. The conversation ended with me asking her to let me know when she gets her driver's license back and we could look at other opportunities.[8]

(Plaintiff's Appendix at 62)

A plaintiff in an employment discrimination case may avoid summary judgment by presenting direct evidence of discrimination. *Schierhoff v. GlaxoSmithkline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006). In this context, direct evidence "must be strong enough to show 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the employment decision." *Id*. (quoting

---

[8] *See also* Defendants' Appendix at 117-123 (transcript of the August 2, 2005 tape recorded conversation between Plaintiff and Swaim). This portion of the transcript of the tape recorded conversation between Plaintiff and Swaim is consistent with Swaim's statement following Plaintiff's complaint to the TIPS hotline. The discussion of Plaintiff not having a valid driver's license was in the context of her not being promoted to the position of assistant manager which is not the same as the ISS position.

13

*Thomas v. First National Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)). Direct evidence includes "'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude,' where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." *Schierhoff*, 444 F.3d at 966 (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)). Direct evidence might include "proof of an admission that gender was the reason for an action, discriminatory references to the particular employee in a work context, or stated hostility to women being in the workplace at all." *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1017 (8th Cir. 1999) (citations omitted). However, direct evidence does not include "'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).

If a plaintiff presents direct evidence that an illegal criterion such as sex was used by an employer in a decision regarding his or her employment, then the *Price Waterhouse* mixed motive standard, as modified by § 107 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(m) should be applied. *Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999). "Under this modified *Price Waterhouse* standard, a defendant is liable for discrimination upon proof by direct evidence that an employer acted on the basis of a discriminatory motive, and proof that the employer would have made the same decision absent the discriminatory motive is only relevant to determining the appropriate remedy." *Id.*; *see also Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046 (8th Cir. 2005) ("Evidence of the employer's motives for the action, and whether the presence of a mixed motive [sic] defeats the plaintiff's claim, is a trial issue, not intended for summary judgment."); *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004) ("At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that

14

unlawful discrimination was *a* motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment. Therefore, evidence of additional motives, and the question whether the presence of mixed motives defeats all or some part of plaintiff's claim, are trial issues, not summary judgment issues.").

The Court, having viewed the record in the light most favorable to Plaintiff, finds that Swaim, as a decisionmaker, made statements--including Plaintiff did not get the ISS position because she is a female and gender is a consideration for filling the ISS position-- that constitute direct evidence of sex discrimination. *See Kerns*, 178 F.3d at 1017 (proof of an admission that gender was the reason for a particular employment action constitutes direct evidence). The Court further finds that Plaintiff's direct evidence is sufficient to support a finding by a reasonable fact finder that an illegitimate criterion motivated Defendants' employment decision. *See Schierhoff*, 444 F.3d at 965 (explaining the standard for determining the sufficiency of direct evidence). Because Plaintiff has presented direct evidence of sex discrimination, summary judgment is not appropriate. *See Griffith*, 387 F.3d at 735 ("At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action."). Accordingly, the Court determines that Defendant's motion for summary judgment on Plaintiff's sex discrimination claim for failure to promote is denied.

### B. *Plaintiff's Retaliation Claim*

It is an unlawful employment practice "for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff does not assert direct evidence of discriminatory retaliation; therefore, the Court applies the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 729 (1973) to Plaintiff's retaliation claim. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 936

15

(8th Cir. 2006) (citation omitted). Under the burden-shifting analysis of *McDonnell Douglas*, a plaintiff must first establish a prima facie case of retaliation. *Id*. If the plaintiff does so, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment decision. *Id*. If the employer provides such a reason, then the burden shifts back to the plaintiff to present evidence that the employer's reason was mere pretext. *Id*.

### 1. Plaintiff's Prima Facie Case

In order to establish a prima facie case of retaliation against an employer, Plaintiff must show that: "(1) [she] engaged in statutorily protected activity, (2) [she] suffered an adverse employment action, and (3) a causal connection exists between the two." *Gilbert v. Des Moines Area Community College*, 495 F.3d 906, 917 (8th Cir. 2007); *see also Thomas v. Corwin*, 483 F.3d 516, 530 (8th Cir. 2007) (providing the elements necessary for establishing a prima facie case of retaliation). The Title VII provision against retaliation "protects individuals 'from retaliation that produces an injury or harm.'" *Gilbert*, 495 F.3d at 917 (quoting *Burlington Northern and Santa Fe Railway Co. v. White*, ____ U.S. ____, 126 S. Ct. 2405, 2414, 165 L. Ed. 2d 345 (2006)). Defendants do not dispute that Plaintiff can meet the first requirement of her prima facie case. On August 15, 2005, Plaintiff reported a complaint of sex discrimination to O'Reilly's TIPS hotline. However, Defendants contend that Plaintiff fails to meet the final two elements of her prima facie case.

#### a. Adverse employment action.

Defendants argue that Plaintiff's allegations that her store manager, Jon Workman ("Workman"), ostracized her and stopped talking to her after she made the sex discrimination complaint against Swaim, does not constitute an adverse employment action. Specifically, Defendants argue that even if Workman ignored Plaintiff and stopped having conversations with her, these actions were simply "trivial slights," and not adverse actions. Plaintiff argues that in addition to being ostracized by Workman, she was

16

terminated three weeks after making her sex discrimination complaint against Swaim. The Court finds that for purposes of a prima facie case, an employee who was being ostracized in the workplace by his or her manager immediately after making a complaint of sex discrimination, and then was terminated from employment three weeks after making the complaint, has suffered an adverse employment action. Because there is support in the record for Plaintiff's allegation that she was ostracized by Workman after she made her sex discrimination complaint against Swaim and she was terminated three weeks after making the complaint, the Court finds that Plaintiff meets the second requirement of her prima facie case.

### b. Causal connection.

Defendants argue that Plaintiff was terminated for failing to properly secure the front door of the store at closing on September 4, 2005; and therefore, no causal connection exists between Plaintiff's termination and her complaint of sex discrimination. Plaintiff argues that the timing of her termination, three weeks after making a complaint of sex discrimination, creates an inference of causation for purposes of her prima facie case.

"An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (citations omitted). In *Peterson*, the Eighth Circuit found that the plaintiff's termination two weeks after the protected activity was "close enough to establish causation in a prima facie case." *Id*. at 525; *see also Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) (finding two weeks between the protected activity and termination was enough to establish causation). In *Wallace v. DTG Operations, Inc.*, the Eighth Circuit, found four weeks between the protected activity and the plaintiff's termination to "strongly [support] an inference of causation for the purpose of the prima facie case." 442 F.3d 1112, 1120 (8th Cir. 2006).

17

The Court finds that the three week time period between Plaintiff's complaint of sex discrimination and her termination from employment is close enough to establish a causal connection for purposes of her prima facie case. *See id*. Furthermore, having met her burden on all three elements, the Court finds that Plaintiff has established her prima facie case of retaliation.

### 2. Defendants' Legitimate Non-Retaliatory Reason

Because Plaintiff has met her burden of establishing a prima facie case of retaliation, the burden shifts to Defendants to articulate a legitimate non-retaliatory reason for terminating her. *See Twymon*, 462 F.3d at 936. Defendants provide the following non-retaliatory reasons for terminating Plaintiff:

> On September 5, 2005[,] O'Reilly employees Rich Rillings and Becky Hale found the front door to the store unsecured. As RSS, [Plaintiff] was ultimately responsible for ensuring that the doors to the store were secured. Plaintiff admitted in a written statement that her failure to check was a poor management decision. Securing the store is one of the responsibilities specifically listed on the job description for the RSS position. Prior to termination, Plaintiff had received several written warnings related to her failure to secure the store and its safe, and had been given a first and final warning due to her failure to perform other required night duties.

(Defendants' Brief at 14-15) The Court finds that Defendants have offered legitimate, non-retaliatory reasons for the decision to terminate Plaintiff.

### 3. Pretext

Because Defendants articulated legitimate non-retaliatory reasons for the decision to terminate Plaintiff, the burden shifts back to Plaintiff to present evidence that the employer's reason was mere pretext. *Twymon*, 462 F.3d at 936. "To prove pretext, [Plaintiff] must both discredit [Defendants'] asserted reason for [her termination] and show the circumstances permit drawing a reasonable inference that the real reason for [her termination] was retaliation." *Gilbert*, 495 F.3d at 918 (citation omitted). The Eighth

18

Circuit Court of Appeals has outlined two routes by which a plaintiff may demonstrate a material question of fact at the pretext stage in a retaliation claim:

> First, a plaintiff may succeed indirectly by showing that the employer's proffered explanation is unworthy of credence, because it has no basis in fact. Second, a plaintiff may succeed directly by persuading the court that a prohibited reason more likely motivated the employer. Both of these routes, in effect, amount to showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action.

*Wallace*, 442 F.3d at 1120 (internal quotations and citations omitted). Furthermore, in order to survive summary judgment, a plaintiff must "adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions." *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 717 (8th Cir. 2000) (citation omitted).

Plaintiff does not expressly address whether Defendants' legitimate non-retaliatory reason for terminating her was pretext for retaliation. However, Plaintiff implies that the following facts show Defendants retaliated against her for making a complaint of sexual discrimination: (1) The timing of her termination, (2) her District Manager indicated that she was a "good worker" during their August 2, 2005 conversations, and (3) she was treated differently than other employees.

Specifically, Plaintiff notes that she was terminated three weeks after she made her sex discrimination complaint. However, "more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (citations omitted).

Plaintiff also argues that her past discipline for failing to secure the front door of the store at closing, suggests that it was not a significant problem. Plaintiff maintains that "[i]f it was such a problem, it seems logical that District Manager Randy Swaim would

have discussed it with her in their conversation on August 2, [2005,] where Plaintiff's performance was discussed at length."[9] Specifically, Plaintiff points out that in the August 2, 2005 tape recorded conversation with Swaim, he told her that: (1) the quality of her work was "really good," (2) she was doing a "great job," and (3) she was a "really good" employee and team member.[10] However, the record demonstrates that Plaintiff was disciplined on April 2, 2004 with a "First Warning" for failing to secure the front door at closing,[11] and on June 16, 2004 with a "First Warning" for failing to secure all deposits and closing the store's safe door completely.[12] Plaintiff's employment evaluation on August 20, 2004, provided that her performance in the areas of store closing, judgment, and attendance/punctuality were "unsatisfactory." Plaintiff's overall performance evaluation was "needs improvement."[13] Plaintiff's employment evaluation on July 20, 2005 provided that her performance in the areas of employee coordination, store closing, and judgment needed improvement.[14] On August 31, 2005, Plaintiff received a corrective action marked "Decision Making Leave" which is one step above "First and Final Warning" for unsatisfactory job performance. Specifically, Plaintiff was disciplined for not completing all her responsibilities at night when she was the store closing manager, for having friends and family spending time in the store during the evening hours, and not helping customers or other employees with job duties. Plaintiff's improvement plan provided: "Any further unsatisfactory job performance issues could lead to team member being terminated from employment. [Plaintiff] must perform her dutys [sic] as

---

[9] *See* Plaintiff's Brief at 25.

[10] *See* Defendants' Appendix at 119, 121.

[11] *See* Defendants' Appendix at 140.

[12] *See* Defendants' Appendix at 141.

[13] *See* Defendants' Appendix at 143-44.

[14] *See* Defendants' Appendix at 146.

Case 1:06-cv-00143-JSS   Document 43   Filed 10/05/07   Page 20 of 27

required."[15] Plaintiff was terminated on September 6, 2005, after failing, for a second time, to secure the front door of the store at closing on September 4, 2005. Additionally, Plaintiff admitted that her failure to check to make sure the front door was secured at closing on September 4, 2005, was "a bad judgment call as a member of management."[16]

Lastly, Plaintiff argues that she was treated differently than another employee, Eric Buh ("Buh"), who was present during the store closing on September 4, 2005. Plaintiff points out that Buh was not disciplined even though, according to Plaintiff, he assured her that he had secured the front door at closing on September 4, 2005.[17] Defendants respond that Plaintiff was Buh's supervisor, and it was her responsibility, not Buh's responsibility, to make sure that the front door was secured before closing. Again, it should be noted that Plaintiff recognized that her failure to make sure that the front door was secured at closing was "a bad judgment call as a member of management."[18]

The Court, having viewed the record in the light most favorable to Plaintiff, finds that although the timing of Plaintiff's termination is suspicious, her disciplinary record and employee evaluations from 2004 and 2005 support Defendants' non-retaliatory reason for terminating her. *See Kiel*, 169 F.3d at 1136 ("[M]ore than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."). Furthermore, Plaintiff is unable to show that she was

---

[15] See Defendants' Appendix at 148.

[16] *See* Defendants' Appendix at 188.

[17] Plaintiff also tries to distinguish herself from another employee named Amber. Plaintiff contends that unlike herself, Amber was only given a first warning, and not terminated, after failing to secure the front door at closing. However, Defendants point out that Plaintiff received a first warning the first time she failed to secure the front door at closing on April 2, 2004. *See* Defendant's Appendix at 140 (documentation of Plaintiff's "First Warning"). The September 5, 2005 incident was the second time Plaintiff failed to properly secure the front door at closing.

[18] *See* Defendants' Appendix at 188.

21

treated differently or disciplined differently than any of her co-workers. Moreover, Plaintiff has not presented any evidence that raises "genuine doubt as to the legitimacy of [Defendants'] motive," *Buettner*, 216 F.3d at 717, or that a "prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Wallace*, 442 F.3d at 1120. Therefore, the Court concludes that Plaintiff is unable to discredit Defendants' asserted reason for terminating her, and is unable to show that the circumstances permit a reasonable inference that the real reason for her termination was retaliation. *See Gilbert*, 495 F.3d at 918. Because Plaintiff does not present evidence that Defendants' legitimate non-retaliatory reason for her termination was mere pretext, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

### C. Individual Liability of Swaim and Workman

Defendants argue that Defendant Swaim and Defendant Workman are entitled to summary judgment because supervisors are not subject to individual liability under Title VII claims. Plaintiff asserts that Swaim and Workman may be held individually liable for their violations of Title VII because "the Supreme Court of the United States has not ever ruled on the issue of whether Title VII applies to individuals. . . . Plaintiff urges the Court to follow the plain language of . . . Title VII and rule that individuals may be held responsible for violating it."[19]

The Eighth Circuit Court of Appeals has held that claims against individual defendants such as Swaim and Workman are not allowed in Title VII cases. *See Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998) (The Eighth Circuit has "'squarely held that supervisors may not be held individually liable under Title VII.' *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.*, 121 F.3d 446, 447 (8th Cir. 1997)."). Accordingly, the Court finds that Defendants Swaim and Workman are entitled to summary judgment and dismissal of the Title VII claims against them because they cannot be held individually liable on such claims. However, Swaim and Workman

---

[19] *See* Plaintiff's Brief at 26.

may still be held individually liable on Plaintiff's claims under the Iowa Civil Rights Act. *Vivian v. Madison*, 601 N.W.2d 872, 878 (Iowa 1999) ("[W]e hold that a supervisory employee is subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act.").

### D. Punitive Damages

#### 1. Iowa Civil Rights Act.

Defendants argue that Plaintiff is not entitled to punitive damages under the Iowa Civil Rights Act ("ICRA"). "Iowa law does not permit punitive damages in employment cases." *Madison v. IBP, Inc.*, 330 F.3d 1051, 1054 (8th Cir. 2003) (citing *City of Hampton v. Iowa Civil Rights Commission*, 554 N.W.2d 532, 537 (Iowa 1996) ("Our civil rights statute does not allow for punitive damages.")).

Plaintiff argues that she is entitled to punitive damages under the ICRA. Plaintiff bases her argument on an elaborate and detailed analysis of the Iowa Supreme Court's decision in *McElroy v. State*, 703 N.W.2d 385 (Iowa 2005), which overruled that Court's decision in *Smith v. ADM Feed Corp.*, 456 N.W.2d 378 (Iowa 1990). The issue in *McElroy* was *not* whether punitive damages may be awarded under the ICRA; rather, the issue was whether a plaintiff under the ICRA was entitled to have his or her claims tried by a jury. *McElroy*, 703 N.W.2d at 393. The Iowa Supreme Court determined that "the majority's analysis in Smith was fundamentally flawed and must be overruled. . . . [T]he majority erred when it concluded the ICRA framework was administrative in nature." *Id*. The Iowa Supreme Court concluded that jury trials were available under the ICRA. *Id.* at 395. The Iowa Supreme Court's rationale for its conclusions was partially based on the arguments of the dissent in *Smith*. "The district court does *not* sit as a civil rights commission. . . . When the legislature sought to provide a partial answer to the backlog of undisposed claims before the civil rights commission, it did so by providing an *alternative* to the administrative proceeding in the form of an ordinary civil action." *Smith*, 456 N.W.2d at 387-88 (Carter, J., dissenting) (emphasis in original). The Iowa Supreme Court also noted "[t]he ICRA is no different than any other statute providing a

23

cause of action. The ICRA has always permitted a plaintiff to sue for monetary damages in district court. For this reason, it is not surprising the legislature did not expressly indicate claimants were entitled to a jury trial under the ICRA--it was assumed." *McElroy*, 703 N.W.2d at 394. Plaintiff argues that "the same logic applies to punitive damages. Punitive damages were available under Iowa's civil rights laws for decades, both before and after passage of the ICRA. Surely if the legislature intended to change the status quo, it would have said so."[20]

While Plaintiff's interpretation of *McElroy* is inventive, the Iowa Supreme Court has not addressed, in either *McElroy* or any other case, the merits of Plaintiff's argument that punitive damages should be available under the ICRA in the same manner that jury trials are now available under the ICRA. This Court is unable to predict that the Iowa Supreme Court will extend its reasoning in *McElroy* to the award of punitive damages. Therefore, the Court follows *Madison* and *City of Hampton*, and concludes that Plaintiff is not entitled to punitive damages under the ICRA.

### 2. *Title VII.*

Defendants argue that Plaintiff is not entitled to punitive damages for her Title VII claims because O'Reilly made good faith efforts to comply with Title VII. Specifically, Defendants point out that O'Reilly: (1) Has an equal employment opportunity policy and an anti-harassment policy; (2) provides anti-discrimination training to its employees; and (3) provides employees with a TIPS hotline for making complaints. Defendants also point out that after Plaintiff made her complaint, an investigation of her complaint was performed promptly and, following the investigation, Swaim was disciplined for his actions. Defendants conclude that "[t]hrough both preventive and remedial actions, O'Reilly made good faith efforts to comply with Title VII. Therefore, as a matter of law,

---

[20] *See* Plaintiff's Brief at 29.

Case 1:06-cv-00143-JSS   Document 43   Filed 10/05/07   Page 24 of 27

O'Reilly cannot be held liable for punitive damages in this case."[21] Plaintiff argues that there are disputed facts as to whether Defendants acted in a manner which supports an award of punitive damages. Therefore, Plaintiff contends that Defendants are not entitled to summary judgment on this issue.

"Punitive damages are appropriate if an employer engaged in intentional discrimination with 'malice or reckless indifference to the plaintiff's federally protected rights.'" *Foster v. Time Warner Entertainment Co., L.P.*, 250 F.3d 1189, 1196 (8th Cir. 2001) (quoting *Kolstad v. American Dental Association*, 527 U.S. 526, 535 (1999)). If the employee who commits the discriminatory act is serving in a "managerial capacity" or acting the scope of his or her employment, then malice may be imputed to the employer. *Foster*, 250 F.3d at 1196 (citing *Kolstad*, 527 U.S. at 543). However, "[w]hen an employer promptly and conscientiously responds to complaints of harassment or discrimination with good faith efforts, punitive damages are not warranted." *Dominic v. DeVilbiss Air Power Co.*, 493 F.3d 968, 974 (8th Cir. 2007); *see also Kolstad*, 527 U.S. at 545-46 ("[I]n the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good faith efforts to comply with Title VII.' [*Kolstad v. American Dental Assoication*,] 139 F.3d [958,] 974 [(D.C. Cir. 1998)] (Tatel, J., dissenting).").

The record demonstrates that O'Reilly has an equal employment opportunity policy and an anti-harassment policy which specifically addresses sexual harassment. O'Rielly also provides its employees with anti-discrimination training and a TIPS hotline to make complaints when complaining to the employee's manager is not feasible. In this case, O'Reilly promptly investigated Plaintiff's complaint and reprimanded Swaim for his discriminatory actions. On these facts, the Court finds that O'Rielly promptly responded to Plaintiff's complaint of sex discrimination with good faith efforts. *See Dominic*, 493

---

[21] *See* Defendants' Brief at 17.

Case 1:06-cv-00143-JSS   Document 43   Filed 10/05/07   Page 25 of 27

F.3d at 974. The Court further finds that Swaim's actions were contrary to O'Reilly's good faith efforts to comply with Title VII. *See Kolstad*, 527 U.S. at 545-46. Therefore, the Court concludes that O'Rielly is not liable for punitive damages on Plaintiff's claims.

### E. Front Pay

Defendants argue that they should not be responsible for front pay beyond the date when Plaintiff accepted employment at a higher rate of pay than she was receiving from them. Plaintiff argues that determination of whether she is entitled to front pay is premature, because the court must first determine whether she is entitled to reinstatement in her previous position.[22] The Court agrees with Plaintiff, and finds this issue to be premature. *See United Paperworkers International Union, AFL-CIO, Local 274 v. Champion International Corp.*, 81 F.3d 798, 805 (8th Cir. 1996) ("An equitable award of front pay is generally appropriate when reinstatement must be denied."); *see also Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 730 (8th Cir. 1992) (same). Therefore, the Court determines that summary judgment on this issue is denied.

### VII. CONCLUSION

The Court concludes that Defendants are entitled to summary judgment on Plaintiff's retaliation claim and the issue of punitive damages under the ICRA and Title VII. However, the Court finds that Defendants are not entitled to summary judgment on Plaintiff's sex discrimination claim and the issue of front pay. Lastly, the Court determines that Swaim and Workman are not individually liable for, and should be dismissed from, Plaintiff's Title VII claims.

### ORDER

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1. The Motion for Summary Judgment (docket number 23) filed by Defendants is **GRANTED** in part and **DENIED** in part. Defendants are entitled to summary judgment

---

[22] Plaintiff asked for reinstatement to her previous position in her Petition and Jury Demand. *See* Plaintiff's Petition and Jury Demand at 4.

26

on Plaintiff's retaliation claim and the issue of punitive damages under the ICRA and Title VII. Defendants are not entitled to summary judgment on Plaintiff's sex discrimination claim and the issue of front pay.

      2.     Defendants Randy Swaim and Jon Workman are **DISMISSED** as individual defendants as to Plaintiff's Title VII claims.

      DATED this 5th day of October, 2007.

                             _____
                             JON STUART SCOLES
                             United States Magistrate Judge
                             NORTHERN DISTRICT OF IOWA

Case 1:06-cv-00143-JSS   Document 43   Filed 10/05/07   Page 27 of 27